# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3456 | **DATE** | 10/6/2004 |
| **CASE TITLE** | EARL HAMPTON vs. CITY OF CHICAGO, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion to dismiss is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | OCT 07 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 18 |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EARL HAMPTON, )
)
    Plaintiff, )
)
vs. ) No. 04 C 3456
)
CITY OF CHICAGO, RICHARD PALADINO, )
MICHAEL POCHORDO, GEORGE TRACY, )
GEORGE HOLMES, GUY HABIAK, )
ROBERT M. PODLESAK and the COOK )
COUNTY STATES ATTORNEY, )
)
    Defendants. )

DOCKETED

OCT 0 7 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Earl Hampton filed a six-count complaint against defendants, who he alleges are collectively responsible for his false arrest and wrongful conviction for a 1989 murder. Defendants Cook Count State's Attorney (State's Attorney) and assistant state's attorney Robert M. Podlesak (Podlesak), contend that this court lacks subject matter jurisdiction and that the complaint should be dismissed against them pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, defendants' motion is granted.

## BACKGROUND

In considering defendants' motion to dismiss for lack of subject matter jurisdiction, we accept all well-pleaded allegations as true and make all reasonable inferences in plaintiff's favor. United Transp. Union v. Gateway W. Ry., 78 F.3d 1208, 1210 (7th Cir. 1996). We construct the following factual background from plaintiff's complaint.

On August 2, 1989, Carol Thomas was robbed and murdered, and, sometime later that day, Chicago Police Department (CPD) detectives decided that plaintiff was a suspect.

Detectives then displayed photographs of plaintiff and others to witnesses; however, no witness positively identified plaintiff. Still, on the night of August 2, 1989, plaintiff was arrested without a warrant and transported to Area One police headquarters, where he was interviewed by defendant Podlesak. Plaintiff alleges that Podlesak had also interviewed witnesses prior to his arrest. Also, he was placed in a number of lineups and it was suggested to witnesses Mary Austin and Janet Caldwell, by several detectives, that plaintiff was the offender. After those improper suggestions, Caldwell and Austin identified plaintiff. Plaintiff further alleges that Podlesak "knew or should have known" that these lineups were "suggestive and tainted."

Subsequent to being identified, plaintiff was charged with murder. He contends that after he was charged with murder, detectives discovered that another person, Meltara Thompson, confessed to robbing and shooting Thomas.

After a bench trial in February 1991, plaintiff was found guilty of murder. He was then sentenced to serve 24 years in prison. Apparently the handling of evidence in this case was both inept and improper – plaintiff claims that exculpatory evidence was withheld during trial and that after plaintiff's conviction and failed appeal (*see* People v. Hampton, 249 Ill. App. 3d 329, 188 Ill. Dec. 353, 618 N.E.2d 923 (Ill. App. 1st Dist. 1993)) that evidence was destroyed by members of the CPD. After the apparent destruction of that evidence, plaintiff filed a petition in the Northern District of Illinois for a writ of habeas corpus. The petition was denied, but the court of appeals vacated the district court's decision. *See* Hampton v. Roth, 221 F.3d 1338 (table), 2000 U.S. App. LEXIS 24294, 2000 WL 975173 (7th Cir. 2000). On remand, the district court granted plaintiff's petition and remanded the case to the Circuit Court of Cook County. *See* United States ex rel. Hampton v. Roth, 2000 U.S. Dist. LEXIS 14093, 2000 WL 1377097

(N.D. Ill. 2000). When released from prison, plaintiff had been incarcerated for over 11 years. The state then retried plaintiff in the circuit court and he was found not guilty of murder and armed robbery.

Plaintiff's six-count complaint includes allegations against CPD members, Podlesak and, by extension, the City of Chicago (City) and the State's Attorney. Counts I, II and III are brought pursuant to 42 U.S.C. § 1983 and allege civil rights violations. In Count I plaintiff asserts that CPD detectives falsely arrested him. In Count II he states that CPD detectives and Podlesak violated his right to a fair trial. And in Count III he claims a conspiracy existed between CPD detectives and Podlesak. The next three counts are based on state law. Count IV is a malicious prosecution claim against detectives, the City, Podlesak, and the State's Attorney. Count IV(A),[1] filed against the same defendants as Count IV, alleges intentional infliction of emotional distress (IIED). Count V is a state law claim for *respondeat superior*.

Only defendants State's Attorney and Podlesak move to dismiss the complaint. The State's Attorney argues that the Eleventh Amendment shields him from plaintiff's claims, and Podlesak contends that sovereign immunity bars plaintiff's state law claims and that he is absolutely immune from suit for his prosecutorial acts.

## DISCUSSION

Plaintiff concedes that the Eleventh Amendment bars his claims against the State's Attorney, and therefore Counts IV, IV(A), and V are dismissed with respect to the State's Attorney. Addressing Podlesak's claims, however, involves considerably more effort.

---

[1] Plaintiff has two counts numbered "Count IV." In their motion to dismiss, defendants call the second Count IV "Count IV(A)." Plaintiff used this labeling in his response to the motion to dismiss and we will do the same.

## Sovereign Immunity

Podlesak argues that this court lacks subject matter jurisdiction over the state law claims in Counts IV and IV(A) because he is, as an assistant state's attorney, a state official, and Illinois law requires that tort claims against a state be brought in the Illinois Court of Claims.[2] In response, plaintiff contends that the Court of Claims does not have exclusive jurisdiction because he alleged that Podlesak acted in violation of state law and in excess of his authority.

Because Podlesak raises the doctrine of sovereign immunity in the context of the state law claims, state immunity rules apply. Benning v. Bd. Of Regents of Regency Universities, 928 F.2d 775, 779 (7th Cir. 1991). The Illinois Constitution abolishes sovereign immunity but also gives the legislature the authority to reinstate it. The legislature exercised that authority when it enacted the State Lawsuit Immunity Act, which provides that the State may be a defendant only in circumstances enumerated in the Court of Claims Act. 745 ILCS 5/1. The Court of Claims Act establishes the Illinois Court of Claims as the exclusive forum for "[a]ll claims against the State for damages in cases sounding in tort." 705 ILCS 505/8(d). *See* Jinkins v. Lee, 209 Ill.2d 320, 807 N.E.2d 411, 417, 282 Ill. Dec. 787 (Ill. 2004). The critical issue is thus whether Counts IV and IV(A) are actually against the State. If they are, then the Court of Claims has exclusive jurisdiction.

Illinois courts have often taken "divergent approaches to the sovereign immunity issue." Chavez v. Illinois State Police, 27 F. Supp. 2d 1053, 1081-83 (N.D. Ill. 1998). In Healy v. Vaupel, Ill.2d 295, 549 N.E.2d 1240, 1247, 140 Ill. Dec. 368 (Ill. 1990), the court reasoned

---

[2] We assume, for now, that the state law claims would survive dismissal of the federal claims, on the basis of supplemental jurisdiction.

that a suit is against the state when "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within the employee's normal and official functions of the State, then the cause of action is only nominally against the employee." *Id.* (quoting Robb v. Sutton, 147 Ill. App. 3d 710, 498 N.E.2d 267, 272, 101 Ill. Dec. 85 (Ill. App. 4th Dist. 1986). When all three Healy factors exist it is as if the action is brought against the state directly and sovereign immunity applies. Janes by First Nat'l Bank v. Albergo, 254 Ill. App. 3d 951, 626 N.E.2d 1127, 1132, 193 Ill. Dec. 576 (Ill. App. 1st Dist. 1993). Two years after Healy, in Currie v. Lao, 148 Ill.2d 151, 592 N.E.2d 977, 980, 170 Ill. Dec. 297 (Ill. 1992), the court stated that the "proper inquiry is to analyze the source of the duty the employee is charged with breaching in committing the allegedly negligent act." Under that standard, sovereign immunity applies if the state employee breached a duty that existed solely because he was an employee of the state. In contrast, sovereign immunity does not apply if the state employee breached a duty that existed independent of his employment. *Id.* In considering sovereign immunity issues, the Seventh Circuit has generally applied Currie's source of duty test. *See* Magdziak v. Byrd, 96 F.3d 1045, 1048-49 (7th Cir. 1996); Turner v. Miller, 301 F.3d 599, 602 (7th Cir. 2002). But in Richman v. Sheahan, 270 F.3d 430, 441-42 (7th Cir. 2001), the court relied on the three-part Healy test. We believe that the district court in Chavez took a reasonable approach when it harmonized Currie and Healy by viewing the source-of-duty test as an "amplification" of Healy's second factor. That approach anticipated Jinkins v. Lee, a recent Illinois Supreme Court decision. In Jinkins the court quoted the Healy test as the standard for determining if an action is against the state, and then stated that

the dispute before it focused on the second factor. Immediately following that observation, the court cited, discussed, and applied the Currie source-of-duty test. Jinkins, 807 N.E.2d at 418. Thus, in applying state immunity rules, it is appropriate to reference both Healy and Currie.

The first Healy factor is present here. Plaintiff does not show that Podlesak acted beyond the scope of his authority by committing wrongful acts. Counts IV and IV(A) fail to allege that Podlesak acted in a manner inconsistent with and unrelated to his role as an assistant state's attorney. Plaintiff attempts to save Counts IV and IV(A) by pointing out that Court of Claims does not have exclusive jurisdiction when it is alleged that the state employee acted in excess of his authority or in violation of statutory or constitutional law. *See* Healy, 549 N.E.2d at 1247.

If an agent acts with malice or animosity, his conduct is likely in excess of the scope of his authority. Similarly, if an agent acts to serve himself rather than his employer, then sovereign immunity does not apply. Plaintiff contends that Podlesak exceeded his authority by "acting intentionally and maliciously in violation of Illinois state law." However, Counts IV and IV(A) are silent as to intentional or malicious conduct. The only moments that plaintiff comes close to alleging that Podlesak acted in excess of his authority are in his federal counts, which defendant does not try to dismiss on sovereign immunity grounds. Plaintiff alleges that Podlesak "knew or should have known" of the improper lineups, but, significantly, plaintiff claims that detectives and not Podlesak suggested to witnesses that plaintiff was the offender. Similarly, plaintiff alleges that detectives and not Podlesak physically abused him when plaintiff refused to sign a written confession. Podlesak did not destroy the allegedly exculpatory evidence. These facts are distinguishable from those in Patterson v. Burge, 328

F. Supp. 2d 878 (N.D. Ill. 2004), in which the district court concluded that the state's attorney defendants acted in excess of their authority, which gave it subject matter jurisdiction. In that case the plaintiff accused the state's attorneys present during his brutal interrogation of "actively participating . . . in torturing him and fabricating his confession." *Id.* at 892. That description does not fit Podlesak's conduct.

Paragraph 8 of plaintiffs' complaint further undermines plaintiff's position. In that paragraph he writes, "Podlesak ... was at all times relevant to this complaint employed [sic] the States Attorney of Cook County and acting within the scope of his employment and under color of law." Podlesak's conduct cannot be in excess of his scope of authority if it was simultaneously within the scope of his employment. Even if Podlesak's conduct was willful and wanton, absent allegations that he acted for a purpose independent of and unrelated to his employment, the conduct is not outside the scope of agency. Richman, 270 F.3d at 442. And just as plaintiff states in his complaint, Podlesak was at all times acting within the scope of his employment. In so holding, we do not adopt defendants' argument that plaintiff has failed to allege adequately malice. Defendant rests that argument on cases that require fact pleading. *See* Management Ass'n of Illinois, Inc. v. Bd. Of Regents of Northern Illinois Univ., 248 Ill. App. 3d, 599, 618 N.E.3d 694, 705-06 (Ill. App. 1st dist. 1995); Nikelly v. Stubing, 204 Ill. App. 3d 870, 562 N.E.2d 360, 364 (Ill. App. 4th Dist. 1990). Still, plaintiff has failed to plead even conclusions (which would satisfy federal notice pleading requirements) that Podlesak acted outside the scope of his agency.

Next is Currie's source of duty test. Even though this test seems geared for cases involving negligence claims, it may be analogized to the facts here. Podlesak interacted with plaintiff solely because he was an assistant state's attorney. There was no other independent

reason that brought the two together. In cases applying the source of duty test (or the second prong of Healy), sovereign immunity exists when the duty exists solely because of the agent's employment. For example, in Healy, the court held that sovereign immunity applied because the relationship between plaintiff, a student injured in a gymnastics accident, and defendants, university employees involved in school gymnastics, existed solely because of defendants' statuses as university employees. Thus, sovereign immunity applies when there is no independent duty. In contrast, in Currie, sovereign immunity did not shield the defendant police officer who crashed his squad car into another driver because the defendant's duty stemmed from his status as a driver on a public road and not from his status as a police officer. Similarly, sovereign immunity does not protect a state doctor because a doctor owes a duty to his patients regardless of his status as an employee of the state. *See* Janes, 626 N.E.2d at 1136; Jinkins, 807 N.E.2d at 416-17 (citing Madden v. Kuehn, 56 Ill. App. 3d 997, 372 N.E.2d 1131, 14 Ill. Dec. 852 (1978), Watson v. St. Anne's Hospital, 68 Ill. App. 3d 1048, 386 N.E.2d 885, 25 Ill. Dec. 411 (1979)). Any and all of Podlesak's duties stem from his status as an agent of the state; there is no independent source. *See* Turner, 301 F.3d at 602. Further, unlike a physician or driver, Podlesak owed no other general duty to plaintiff.

Finally, Podlesak's actions involved matters squarely within his normal and official functions as an assistant state's attorney. Plaintiff alleges that Podlesak interviewed various witnesses to the murder; participated in allegedly tainted witness lineups; questioned plaintiff following his arrest; prepared a felony review card; approved felony charges; and prepared a written confession for plaintiff's signature. These are all normal prosecutorial functions, and by carrying out those functions Podlesak served his employer, the state, and no other purpose.

Plaintiff has failed to allege that Podlesak acted beyond the scope of his authority or that his conduct was intentional, malicious or illegal, rather than for the purpose of furthering the interests of the state. As such, plaintiff's state law claims are against the state and therefore must be dismissed. Richman, 270 F.3d at 441. Plaintiff must bring those claims in the Illinois Court of Claims. 705 ILCS 505/8(d). We lack subject matter jurisdiction and dismiss Counts IV and IV(A).

Absolute Immunity

Podlesak next contends that he is absolutely immune for his prosecutorial acts. He continues to rely on Rule 12(b)(1), even though Rule 12(b)(6) is the more appropriate legal standard for his argument. Nevertheless, addressing that argument will not prejudice plaintiff, who focused on Rule 12(b)(6) but ignored Rule 12(b)(1) in his memorandum.

Absolute immunity shields prosecutors from damages when they are sued under section 1983 for initiating and prosecuting the state's case. Imbler v. Pachtman, 424 U.S. 409, 431 (1976). Podlesak contends that plaintiff's allegations only cover his conduct as a felony review prosecutor. In that role, Podlesak was "vested with exclusive discretion in the initiation and management of a criminal prosecution." Hunt v. Jaglowski, 926 F.2d 689, 692 (7th Cir. 1991) (quoting People ex rel. Daley v. Moran, 94 Ill.2d 41, 445 N.E.2d 270, 272, 67 Ill. Dec. 790 (1983)). Plaintiff's complaint focuses on the following conduct taken by Podlesak: interviewing witnesses, deciding what information was necessary for trial, preparing a felony review card, interviewing plaintiff, reading plaintiff his Miranda rights and approving charges against plaintiff. That conduct is all part of initiating a judicial proceeding and part of Podlesak's job as a felony review prosecutor. Absolute immunity extends to a prosecutor's "professional evaluation of evidence assembled by the police and appropriate preparation for

its presentation at trial" and protects Podlesak's actions. <u>Spiegel v. Rabinovitz</u>, 121 F.3d 251, 257 (7th Cir. 1997) (quoting <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993)). Podlesak's conduct thus entitles him to absolute immunity rather than exposes him to liability.

Plaintiff argues that Podlesak was an investigator and is therefore entitled to only qualified immunity. In support of that point plaintiff relies on <u>Buckley</u>. That case does not help him. In <u>Buckley</u> the Supreme Court explained that a prosecutor receives only qualified immunity when he "performs the investigative functions normally performed by a detective or police officer." *Id.* at 273. The abovementioned actions taken by Podlesak are not typically performed by police officers. Instead, those functions are performed by prosecutors. In his memorandum plaintiff writes that Podlesak "maliciously and intentionally corrupted photo and in-person lineups to inculpate" him. But in his complaint plaintiff writes that detectives, and not Podlesak, assembled and then corrupted the lineups. Plaintiff may not amend his complaint with his memorandum in opposition to the motion to dismiss. *See* <u>Car Carriers v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir. 1984). Even granting all reasonable inferences to plaintiff, it is impossible to view Podlesak as a central figure in those tainted lineups. Similarly, it was members of the CPD, and not Podlesak, who testified misleadingly at trial and also destroyed evidence. Plaintiff also alleges that neither the police nor Podlesak reviewed fingerprint evidence from Thomas' vehicle, tested plaintiff for gunshot residue, or examined other forensic evidence. These acts are omissions in the investigative process. If Podlesak had engaged in these investigative acts (which according to plaintiff he did not), then the case for qualified as opposed to absolute immunity would be stronger. In any event, prosecutors may be absolutely immune for failing to investigate or for ignoring evidence. <u>Glick v. Koenig</u>, 766 F.2d 265, 269 (7th Cir. 1985).

As far as learning the identity of an alternative (and more promising) suspect, plaintiff alleges that "Detectives developed knowledge, information and belief that a Meltara Thompson ... had confessed to several people to robbing and shooting Carol Thomas." (Complaint, ¶ 67). Podlesak's absence from that allegation is significant and exemplifies that if plaintiff was railroaded it was by detectives and not Podlesak, who functioned as a prosecutor rather than a policeman, an advocate rather than an investigator. Counts II and III are dismissed against Podlesak -- he is immune from plaintiff's section 1983 claims.

## CONCLUSION

For the foregoing reasons defendants' motion to dismiss is granted.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　*James B. Moran*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　JAMES B. MORAN
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Senior Judge, U. S. District Court

Oct. 6, 2004.